[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 22, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-16237
Non-Argument Calendar
_____

Agency No. A097-947-529

FNU YUNAIDI,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(April 22, 2009)

Before BLACK, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

FNU[1] Yunaidi, a native and citizen of Indonesia, petitions this court for review of the Board of Immigration Appeals' ("BIA") affirmance of the Immigration Judge's ("IJ') order of removal and denial of withholding of removal and relief under the United Nations Convention Against Torture ("CAT") relief.[2] For the reasons that follow, we dismiss the petition in part and deny the petition in part.

Yunaidi is a native and citizen of Indonesia who entered the United States in 2001 on a non-immigrant visa. In 2002, he changed his status to a student, but he left school in 2005 and began working without authorization. In 2006, Yunaidi filed an application for asylum, withholding of removal, and CAT relief, claiming that he had been persecuted in Indonesia because he is an ethnic Chinese Christian.

At a removal hearing, Yunaidi testified that he is an ethnic Chinese who had been born in Indonesia. His parents and two siblings currently live in Jakarta. Although his parents were Buddhists, Yunaidi attended Catholic school as a child and was baptized in 1998. That same year, he and his family were forced to flee Indonesia and travel to Singapore to avoid riots targeting the Chinese. Due to lack

---

[1] FNU stands for "first name unknown."

[2] Yunaidi initially requested asylum relief as well, but the asylum application was untimely and the IJ and BIA rejected Yunaidi's claim that there were changed circumstances to excuse his untimely application. Because Yunaidi does not challenge this finding in his petition for review, he has abandoned it. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 (11th Cir. 2005).

of money, they were forced to sleep in the airport for two to three weeks before they returned to Indonesia. The family business was looted during the riots, but none of the family members was physically harmed. Yunaidi further explained that he lived near a mosque and was the target of Muslim "fund-raising."[3] In 2000, Yunaidi witnessed a bomb explode as he was entering church, but he was not injured. Sometime in 2001, while a student at the University, Yunaidi was invited to participate in a demonstration against the United States. Yunaidi did not participate in the demonstration and did not return to school. Shortly thereafter, he came to the United States.

In support of his application, Yunaidi submitted numerous articles covering violence by Muslims and threats against Christians in Indonesia. He also submitted the 2006 State Department Country Report and the Report of Religious Freedoms, which acknowledged that there continued to be some violence against Christians and Chinese, but expressed that the Indonesian government had made progress handling conflicts and that there had been a reduction in religious and ethnic tensions in some areas.

In reaching its decision, the IJ declined to make a specific credibility determination and found that even assuming the testimony was true, Yunaidi would not be entitled to relief. First, the IJ found that there was no past

---

[3] Yunaidi did not explain what he meant by "fund-raising."

3

persecution because Yunaidi was never detained and no act had been taken against him. The IJ further noted that Yunaidi's claims of religious and ethnic persecution were inconsistent with the Country Reports because violence against Christians was not country-wide, as some areas of Indonesia were predominately Christian. Second, the IJ concluded that there was no nexus between the alleged persecution and any protected ground. Because the claim would fail under the asylum standards, and the standard for withholding of removal and CAT relief was more stringent, the IJ determined that Yunaidi would not be entitled to withholding of removal.

Yunaidi appealed to the BIA, asserting that he established past persecution, that the government had not rebutted the presumption of future persecution, and that even if there was no presumption, the Country Reports established a well-founded fear of future persecution. The BIA adopted and affirmed the IJ's decision, confirming that there was no evidence of past persecution and no well-founded fear of future persecution. This petition for review followed.

Yunaidi argues that the IJ erroneously ignored his evidence of past persecution arising from the riots that forced his family to flee, the bombing of his church, and the destruction of his family's business. He further contends that the IJ erred by concluding relocation was possible in light of the Country Reports's acknowledgment that violence continued throughout the country. He next argues

4

that the IJ improperly concluded he had no well-founded fear of future persecution despite his credible testimony. He asserts that the IJ failed to consider the entire record, including the State Department Reports, in reaching its decision, and he contends that the reports show a "pattern and practice" of persecution. Yunaidi then argues that the BIA erred when it adopted the IJ's findings, as he can show it is more likely than not he will be persecuted if returned to Indonesia. Finally, Yunaidi claims he is entitled to CAT relief because the government acquiesced to the discrimination by private individuals.

Because the BIA relied upon the reasons identified in the IJ's order and gave its own analysis, we review both decisions. Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1235-36 (11th Cir. 2006); Chacon-Botero v. U.S. Att'y Gen., 427 F.3d 954, 956 (11th Cir. 2005). To the extent the IJ's decision was based on a legal determination, we review the decision de novo. Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1254 (11th Cir. 2006); D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817 (11th Cir. 2004). The IJ's factual determinations are reviewed under the substantial evidence test, and we "must affirm the [IJ's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar v. Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir. 2001) (quotation and internal marks omitted). Additionally, "[u]nder the substantial evidence test, we review the record evidence in the light most favorable to the agency's decision

5

and draw all reasonable inferences in favor of that decision." Ruiz, 440 F.3d at 1255 (citing Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc). Thus, "a finding of fact will be reversed only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Id. (quotation omitted).

An alien shall not be removed to a country if his life or freedom would be threatened on account of "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3). The alien bears the burden to show that it is "more likely than not" that he will be persecuted on account of one of the five protected grounds if returned to his country. Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003) (hyphens omitted). To establish eligibility, the alien must show either that he suffered past persecution or that he has a well-founded fear of future persecution. See 8 C.F.R. § 208.16(b)(1)-(2); Mendoza, 327 F.3d 1287.

The applicant must present "specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of [a statutory factor]." Al Najjar, 257 F.3d at 1287 (considering asylum claim) (quotations omitted). An applicant may also sustain his burden of proof without showing that he would be singled out for persecution in his home country if:

(i) The applicant establishes that in that country there is a pattern or

6

practice of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion; and (ii) The applicant establishes his or her own inclusion in and identification with such group of persons such that it is more likely than not that his or her life or freedom would be threatened upon return to that country.

8 C.F.R. § 208.16(b)(2).

This court has stated that "persecution is an extreme concept requiring more than a few isolated incidents of verbal harassment or intimidation." Ruiz v. Gonzalez, 479 F.3d 762, 766 (11th Cir. 2007) (quotation marks omitted). Although unpleasant, discrimination and harassment do not constitute persecution. See Sepulveda, 401 F.3d at 1231.

To show future persecution, an alien "must demonstrate that his or her fear of persecution is subjectively genuine and objectively reasonable." Al Najjar, 257 F.3d at 1289. "The subjective component is generally satisfied by the applicant's credible testimony that he or she genuinely fears persecution." Id. "[T]he objective prong can be fulfilled either by establishing past persecution or that he or she has a good reason to fear future persecution." Id. (quotation marks omitted). Further, "[a]n alien cannot demonstrate that [he] more-likely-than-not would be persecuted on a protected ground if the [BIA] finds that the alien could avoid a future threat by relocating to another part of [his] country." Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1375 (11th Cir. 2006) (quotation marks omitted); 8 C.F.R.

7

§ 208.16(b)(2). Evidence that an alien's family continues to reside unharmed in a country diminishes a well-founded fear of future persecution claim. See Ruiz, 440 F.3d at 1259.

Finally, to be entitled to relief under the CAT, an applicant must establish that it is more likely than not that he would be tortured at the instigation of or with the consent or acquiescence of the government. 8 C.F.R. § 208.16(c)(2). "Torture is defined as any act by which severe pain or suffering . . . is intentionally inflicted on a person for . . . any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1).

As an initial matter, we lack jurisdiction to consider Yunaidi's claims that were not raised before the BIA.[4] Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006); Fernandez-Bernal v. U.S. Att'y Gen., 257 F.3d 1304, 1317 n.13 (11th Cir. 2001). Accordingly, we dismiss the petition to the extent it asserts new claims on these grounds.

---

[4] Yunaidi argues for the first time that (1) he established past persecution based on (a) his family's flight to Singapore, (b) the loss of his family's business, and (c) a pattern and practice of persecution; (2) the IJ ignored portions of the State Department reports and failed to acknowledge reports that showed no improvement in country conditions; and (3) the IJ erroneously required him to show the government would have subjected him to torture and that the threat was countrywide.

8

With respect to Yunaidi's preserved claims, we conclude that the IJ and BIA properly denied relief. Because the IJ did not make an express adverse credibility determination, we will assume, as did the IJ, that the testimony was credible. Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005).

Nevertheless, assuming Yunaidi's testimony was credible, Yunaidi failed to establish that he suffered past persecution on account of a protected ground. Yunaidi testified that his family was forced to flee to Singapore due to civil unrest, that he was asked to participate in a demonstration but he suffered no harm when he declined, and that he was present outside a church when a bomb went off. These incidents do not rise to the level of persecution.

In addition, Yunaidi failed to show that he more likely than not would face persecution if he returned to Indonesia. The records reflect that country conditions are improving. The government recognizes Christianity as one of the permissible religions and government policy prohibits religious discrimination. Furthermore, the government has removed any requirement that ethnic Chinese and Christians designate their status on the national identification cards. Moreover, Yunaidi's family continues to reside in Indonesia without incident.[5]

Finally, Yunaidi has not shown that he would face torture by the government

---

[5] Although Yunaidi alleges that his sister was harassed due to her ethnicity, he testified that she was approached by a man who exposed himself to her on the bus. It is unclear how this establishes persecution on account of a protected ground.

or with the government's consent if he returned to Indonesia. Yunaidi presented

no evidence for the IJ or BIA to conclude that he would suffer harm at the

instigation or with the consent of the government. Accordingly, we deny the

petition on these grounds.

     PETITION DISMISSED IN PART; DENIED IN PART.